FILED'16 FEB 4 10:32USDC-

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Gary Allen Harrington, *sui juris*
Plaintiff,

v.

STATE OF OREGON, et al., a political subdivision of the United States of America, bound by the Constitution of the United States of America, 1789-1791,

v.

The United States of America, Attorney General, Loretta Lynch Department of the Interior, Sally Jewell, Secretary; Neil Kornze, Bureau of Land Management,

Case No. 1:16-cv-00200-CL

Complaint for Damages, Trespass, Destruction of Private Property, Impairing the Obligations of a Contract, Breach of Fiduciary Duty, Unlawful Arrest, Unlawful Imprisonment, Coercion

Article III Court Demanded

**Jurisdiction**

The United States District Court has jurisdiction under Article 1, Section 10, Clause 1, "No State shall pass any Bill of Attainder, ex post facto law, or Law impairing the Obligations of Contracts", and 28 U.S.C. §§1331 and Article VI, Section 3, breach of fiduciary duty violation of oath of office by public officers and / or agents.

**Parties**

Plaintiff:

Gary Allen Harrington
1876 Crowfoot Road
Eagle Point, Oregon 97524
541 826-7590

Defendants:

UNITED STATES OF AMERICA
Attorney General, Loretta Lynch
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

United States Department of Interior
Sally Jewell, Secretary
1849 C Street, N.W.
Washington DC 20240

Neil Kornze
BLM Washington Office
1849 C Street NW, Rm. 5665
Washington DC 20240

STATE OF OREGON
Governor Kate Brown
160 State Capitol
900 Court Street
Salem, Oregon 97301-4047

STATE OF OREGON
Ellen F. Rosenblum
Attorney General
1162 Court St NE
Salem, OR 97301-4096

Patrick A. Flanagan
Sr. Assistant Attorney General
1515 SW 5th Ave., Suite 410
Portland, Oregon 97201

Judge Tim Gerking
Circuit Court Judge
Jackson County Circuit Court
100 South Oakdale
Medford, Oregon 97501-3127

Judge Lorenzo Mejia
Circuit Court Judge
Jackson County Circuit Court
100 South Oakdale
Medford, Oregon 97501-3127

Ellen F. Rosenblum
Oregon Attorney General
1162 Court Street NE
Salem, Oregon 97301-4096

**LARRY PAUL MENTEER**
Assistant Water Master, District 13,
Department of Water Resources
10 S. Oakdale, Rm. 309A
Medford, OR 97501

**BRUCE SUND**
Assistant Regional Manager,
OWRD Southwest Region
10 S. Oakdale, Rm. 309A
Medford, OR 97501

**BARTON T. CHAPMAN**
Assistant Water Master, District 13,
Department of Water Resources
10 S. Oakdale, Rm. 309A
Medford, OR 97501

**BRENDA BATEMAN**
Technical Services Division
Oregon Water Resources Department
725 Summer Street NE
Salem, OR 97301

**ANITA HUFFMAN**
Oregon Water Resources Department
725 Summer Street NE
Salem, OR 97301

**PHILLIP WARD**
Oregon Water Resources Department
725 Summer Street NE
Salem, OR 97301

**DWIGHT FRENCH,**
Oregon Department of Water Resources
725 Summer St. NE, Suite A.
Salem, OR 97301

**GARY THOMPSON,**
Oregon Department of State Police
4500 Rogue Valley Hwy. Suite A
Central Point, OR 97502-1636

**JANELLE RENE MCFARLAND-DUNLEVY**
Oregon Department of State Police
4500 Rogue Valley Hwy. Suite A
Central Point, OR 97502-1636

**JEFF ALLISON**
255 Capitol St NE
4th Floor
Salem, OR 97310

Oregon Department of State Police
4500 Rogue Valley Hwy., Suite A
Central Point, Oregon 97502-1636

Officers Involved:

David Gifford
Josh Nugent
Kirk Meyer
Jeff Thompson
Mike Cushman
Brad Bennet

Marty Marchand
Lynn Withers
Don Frerichs
Jason Stone

Oregon Department of Transportation
White City / District 8
100 Antelope road
White City, Oregon 97503

Equipment Operators / Drivers

Steve Sill
Keith Mills
Everett Carroll
Jerry Marmon
Jeremiah Griffin
George Harshmen
Rich Gonzolves

**Statement of the Case**

Plaintiff owns real estate at 1876 Crowfoot Road, Eagle Point, Oregon, under a Patent issued by the United States of America as No. 994[Exhibit 2] recorded in the public record at book 43, page 449 , and No.1096823[Exhibit 5], recorded in the public record at Book 219 Page 43, being regular on their face, is a contract executed and executory between plaintiff and the United States of America, forever. Said Patent contains language that coveys all the right title and interest the United States of America held in the land prior to issue of the patent and all appurtenances that attach to the land, including but not limited to the use of all water and other natural resources associated with the land.

Defendants under color of state law trespassed upon plaintiff's private property in total disregard of the rights secured to plaintiff, destroyed private property, arrested and imprisoned plaintiff for no crime, and destroyed the ponds lawfully constructed thereon. Defendants colluded together to destroy property, violate rights, arrest and imprison plaintiff without due process and in violation of clearly established laws. Defendants by their collective actions caused plaintiff to be imprisoned without due process and a meaningful trial, held in solitary confinement for over 61 days.

Defendants actions were willful, intentional, and in total disregard of the Constitution of Oregon, Article 1, Section 9, 11,16, 19, 22, 34 and the Constitution of the United State, Article 1, Section 10, Clause 1 and the Bill of Rights Article 1,4, 5, 6, 7, 9, 10 and 14. During the trial in Jackson County Circuit Court, Judges and Attorney General colluded for the purpose of creating a Motion in Limine and Order [Exhibit 70] in order to prevent plaintiff from exercising his rights under Letters Patent from the United States, and prevent certified copies of the Letters Patent from being presented to the Jury, thus prejudicing the jury, tampering with evidence, and denying plaintiff due process under the Fifth and Fourteenth Amendments and the Article 1, Section 11 Oregon Constitution.

Defendants are sued in their individual and official capacity.

## Factual Allegations

1. The patent for lands issued by the United States of America is conclusive evidence of the estate in lands granted and is the only evidence of lawful title.

2. A certified copy of the patent should be obtained to set at rest any adverse claim against the patent.

3. The STATE OF OREGON and all of its agents and employees are bound to obey the Constitution of Oregon and the Constitution of the United States, c. 1789-1791.

4. Article 1, Section 10 of the Constitution of the United States, c. 1789-1791 is in fact a Bill of Rights for protection of the people of the state against legislative enactments.

5. When state legislators violate their oath to support and defend the Constitutions and pass legislation that is not authorized under the Constitution of the United States or the Constitution of Oregon their acts are void and have no force of law.

6. Plaintiff attaches hereto and incorporates herein the Affidavit of Gary Allen Harrington as if fully stated herein.

7. The law is very jealous of the liberty of the citizen.

8. One who interferes with another's liberty does so at his peril.

9. Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public street.

10. False imprisonment has been well defined to be a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without any legal authority.

11. Article 1, Section 21 of the Oregon Constitution prohibits the state and all its actors from passing any *ex-post facto* law, or law impairing the obligations of contracts.

12. An unconstitutional act is not law. It creates no office, imposes no duty, it is in legal contemplation as though it was never passed.

13. Oregon cannot appropriate water rights previously granted without just compensation making the Acts of 1909 and 1925 unconstitutional.

14. Article 1, Section 10, Clause 1 of the Constitution of the United States is a Bill of Rights against State action by these express words, "No State shall, pass any law impairing the obligations of contracts."

15. A patent from the United States of America to the original grantee is a contract executed and executory to the heirs and assigns forever.

16. Oregon Laws at ORS 93.650 and 93.680 place restrictions upon all State actors including judges and all officers of the court, providing authority for all litigants to place into the records of proceedings "patents" from the United States or Oregon for lands granted.

17. A patent for land is the highest form of title known to our law and is conclusive evidence against everything except a senior patent.

18. A patent extinguishes all of the rights the government previously held in the land granted including the "water rights" at common law.

19. A patent is a grant of the, "land, with the appurtenances thereof, unto the said claimant and the heirs and assigns of the said claimant forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, ..."

20. A state Act that attempts to divest any right granted impairs the obligation of the grant and is void.

21. The State of Oregon and all its officers, agents and employees are fiduciaries of the Public Trust and hold their office or position at the pleasure of the people they serve.

22. One who holds a public office owes a public trust duty to the People to execute his office or position in compliance with the Acts of the Legislature that govern their conduct and the Constitution of Oregon which is the superior law that controls the agent and the agency.

**Count One.**

**Trespass.**

23. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

24. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits 1 thru 110 as if fully stated herein.

25. Defendants collectively participated in trespass and colluded with other actors to trespass on multiple occasions with the intent that their conduct cause social, emotional and financial harm and injury to plaintiff, including the removal of lawfully existing ponds for water storage for the purpose of fire suppression and possible irrigation of plaintiff's private property.

26. Defendants knew or should have known that Patents for lands from the United States create absolute title in the owner thereof, said titles are not cut off by the creation of the state, and the state has no jurisdiction on the patented lands.

27. Defendants collectively exceeded their authority, entered land without a valid warrant, destroyed private property and seized and destroyed property outside of the dominion and control of defendants, to the legal injury of plaintiff and plaintiff's private property rights.

28. Defendants by their reckless and intentional trespass caused injury to the social, emotional, financial, and property rights of plaintiff in the amount of $1,000,000 dollars per named defendant.

**Count Two**

**Taking of private property for public use without just compensation.**

29. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

30. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

31. Defendants named herein, while acting in their official capacity, used the authority of the State to start an action against plaintiff which they knew or should have known was in violation of rights secured to plaintiff under the Patents for Lands issued by the United States of America.

32. Defendants while possessed of the knowledge that plaintiff had the right to impound rain water or other water that crossed this private property, ignored plaintiff's prior right and colluded together in order to fabricate a pretended violation of an Act of the Oregon Legislature that claimed to appropriate all of the water including all water rights in existence on plaintiff's private property.

33. Defendants ignored and refused to honor the Patents from the United States that clearly granted plaintiff the right to any and all water and other natural resources on these patented acres.

34. Defendants used the administrative hearing system of the STATE OF OREGON to further their conspiracy to deprive plaintiff of property rights in the patents and used their administrative process to take away plaintiff's right to water and property rights in the ponds that were built with county and state approval and then approval rescinded and the ponds destroyed.

35. Defendants colluded and conspired together and set up circumstances that would cause plaintiff to invest many thousands of dollars to make improvement to the existing pond in order to obtain the alleged required "permit" which they knew in advance would not be kept in order to cause plaintiff financial injury.

36. Defendants through their actions and promises tricked plaintiff into pleading guilty to misdemeanor charge of "illegally appropriating waters of the state" a criminal charge which they knew or should have known could not exist against a Patent issued by the United States of America.

37. The collective conduct of defendant causes a "taking" of private property "three ponds" and a taking of the monies spent by plaintiff in building and improving the new and existing ponds to defendants' specifications prior to issuance of permits. The taking was made permanent by defendants removing the ponds and destroying the improvement completed by plaintiff at large financial expense.

38. Plaintiff suffered loss of the use and enjoyment of the ponds, the security of knowing, in case of fire, sufficient water was available to defend plaintiff's private property from wild fires, the tens

of thousands of dollars spent to construct, improve, and maintain the ponds while they were in use, and the cost of their destruction in the amount of $100,000.00 per defendant named.

**Count Three**

**False Arrest**

39. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

40. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

41. Defendants colluded and conspired together in order to create a criminal violation while they knew or should have known that a Patent from the United States of America carries with it the right to the use of all water and minerals that exist upon, under or pass over or by, the land granted.

42. Defendants, State of Oregon, by and through its Legislative Branch knew or should have known that a previous Legislature had adopted an Ordinance Irrevocable (Oregon Admissions Act) to never interfere with the primary disposal of the public lands or with any regulations Congress may find necessary for securing the title in said land to bona fide purchasers, such as plaintiff.

43. Defendants colluded and conspired to convert the exercise of the rights granted by the United States of America through the Letters Patent on plaintiff's property into a "criminal offense" in order to punish plaintiff and his family members while defendants knew or should have known that the claim and exercise of constitutionally secured rights cannot be converted into a crime.

44. Defendants colluded and conspired to punish plaintiff in order to extort and discourage others who are possessed of the same rights to refrain from constructing ponds to catch water which all property owners have a right to do irrespective of any ordinance or laws passed by the state, county or city government.

45. Defendants colluded and conspired to create a "criminal charge" against plaintiff, even though they knew or reasonably should have known, that Letters Patent from the United States of America grant "water" rights to plaintiff.

46. Defendants knew or should have known the existence of Letters Patent due to the fact that every County in Oregon maintains Books and Records known as "The Transcripts of Patents" where

said Letters Patent issued by the United States of America is required by Act of Congress to be Transcribed by hand, word for word, and certified to be true and correct upon request.

47. As a direct and proximate cause of the collusion and conspiracy perpetrated by defendants, plaintiff was arrested on six (6) separate occasions and either placed in jail [lodged] or processed and released, wherefore plaintiff suffered social, emotional, financial damages of $1,000,000 dollars per named defendant per incident.

**Count Four**

**False Imprisonment**

48. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

49. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

50. Defendants colluded and conspired to create false charges against plaintiff in order to create a criminal record and defame plaintiff in the community when they knew or should have known that plaintiff had the right to impound all water that falls upon the Patented property per the Transcript of Patent maintained in the Jackson County Records.

51. Defendants while possessed of the superior knowledge of the law intentionally ignored the law and continued to violate plaintiff's rights and conspire to imprison plaintiff for an alleged crime of No Permit to Appropriate Water, when they knew or should have known, the Letters Patent secured in plaintiff as an "assign" of all the right, title and interest of the original grantee which included the right to use all water found upon or under the land granted.

52. Defendants sentenced plaintiff to prison for a combined time of, One hundred one (101) days of which, Sixty one (61) days was spent in **solitary confinement** for violating a statutory scheme which they knew or should have known could not be applied to plaintiff and plaintiff's property rights under the Letters Patent.

53. As a direct and proximate cause of the collusion and conspiracy perpetrated by defendants and the resultant imprisonment plaintiff claims damages for illegal imprisonment by an administrative agency for 101 days equals 2424 hours, equals 145,440 minutes, at $2500 per minute, equals 363,600,000 dollars.

**Count Five**

**Impairing the Obligations of Contracts Article 1, Section 10, Clause 1**

54. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

55. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

56. Defendants while possessed of the superior knowledge of the law and higher duty to obey the laws, intentionally and with malice ignored the law and their oath of office duty to follow the law scrupulously. Defendants intentionally and with malice toward plaintiff as a property owner under Letter Patent from the United States of America ignored their duty to the Constitution of the United States and enacted an alleged law that violates Article 1, Section 10, clause 1 No state shall, pass any law impairing the obligations of contracts.

57. Defendants knew or should have known that the Letters Patent from the United States of America constitute a "contract" executed and executory between plaintiff and the United States of America, forever.

58. Defendants ignored their duty to recognize the superior title to the land which granted plaintiff all the "appurtenances" necessary for the enjoyment of the land contained in the grants.

59. Defendants were under a fiduciary duty imposed by their oath of office, or implied by their position in public office, with or without an oath, or as a "private" employee of public agencies, to be mindful of the rights of plaintiff and plaintiff's family members.

60. Defendants willfully and intentionally with malice breached their duty to the legal and personal injury of plaintiff when they ignored the Letters Patent and claimed via, color of law statute, a superior right to the water that belongs to plaintiff, which impairs the obligation of the contract (Letters Patent) between plaintiff as "assign" in the chain of title, and the United States of America.

61. As a direct and proximate cause of defendant's action of impairing the obligations of said contract, plaintiff suffered social, emotional and financial damages of 1,000,000 dollars per named defendant.

**Count Six**

**Cruel and Unusual Punishment**

62. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

63. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

64. Defendants colluded and conspired to create false charges against plaintiff in order to create a criminal record and defame plaintiff in the community when they knew or should have known that plaintiff had the right to impound all water that falls upon the Patented property per the Transcript of Patent maintained in the Jackson County Records.

65. Defendants acted in concert with others and conspired to devise a scheme whereby they could use Oregon Courts and their administrative officers and procedures to punish plaintiff and cause plaintiff severe mental stress and injury by placing plaintiff in solitary confinement and thus compel plaintiff to obey their unlawful commands to plaintiff's legal injury.

66. Defendants while under a duty to plaintiff and the Constitution of Oregon and the United States of America, ignored their public trust duty and worked in concert to create a criminal offense where none can exist at common law, in order to manufacture an offense punishable by imprisonment, when they knew or should have known that placing plaintiff in "solitary confinement" for such a long period of time (61) days, without a judgement of wrongdoing would be considered as "cruel and unusual punishment".

67. As a direct and proximate cause of defendants' reckless and intentional action plaintiff suffered damage for the abusive and cruel punishment of 61 days in solitary confinement, the mental, social and emotional damages caused by defendants reckless and intentional disregard for plaintiff's rights under the Letters Patent from the United States the sum of 2,500 dollars per minute of solitary confinement of 219,600,000 dollars.

**Count Seven**

**Breach of Fiduciary & Public Trust Duty**

68. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

69. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

70. Individual Respondents named in Complaint are public officers. All public officers are under a public trust duty to perform the functions of their respective position in compliance with the Constitution of Oregon and the Constitution of the United States of America.

71. All public officers, within whatever branch and at whatever level of our government, and whatever be their private vocations, are trustees of the people, and do accordingly labor under every disability and prohibition imposed by law upon trustees relative to the making of personal financial gain from the discharge of their trusts.

72. A public officer, in holding a position of public trust, stands in a fiduciary relationship to the citizens that he or she has been elected to serve. See *Trist v. Child,* 88 U.S. (21 Wall.) 441, 450, 22 L.Ed. 623 (1874); *Felkner v. Chariho Regional School Committee*, 968 A.2d 865, 874, R.I. 2009.

73. This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

74. As these decisions and the Restatement show, the development of the principle of restitution, both at law and in equity, as a remedy for breach by a public official of his fiduciary obligations has obviously been salutary. Restitution, by virtue of its adaptability to individual cases on equitable principles may, as we have seen, reach situations beyond the grasp of other civil or criminal remedies and do justice on equitable principles; where various alternatives were weighed with a view to working out justice so far as possible to all concerned, but always on the fundamental basis of preventing the unfaithful public official or public body profiting from his or its wrongdoing. See 65 Harv.L.Rev. 502 (1952); Lenhoff, the Constructive Trust as a Remedy for Corruption in Public Life, 54 Col.L.Rev. 214 (1954).

75. A public official, clothed with qualified immunity, is not required to anticipate future development of constitutional doctrine, but he is required to respect the established constitutional rights of others. His qualified immunity is not available to him if he does not do that. *Bever v. Gilbertson*, 724 F.2d 1083, 1088 (1984).

76. Defendants' actions in this instant matter demonstrate they planned, colluded, and conspired among themselves to bring about the results obtained, the removal of the ponds lawfully placed upon plaintiff's private property which had harmed no one but merely added to the peace and enjoyment of plaintiff's property as secured by the Letters Patent from the United States of America.

77. Defendants' actions were willful, reckless, and intentional. They colluded together for the purpose of ignoring the Letters Patent and the rights secured thereunder. Their plan included convincing plaintiff and others that upon completion of specific work and improvements "permits" for the alleged "illegal ponds" would in fact be issued. After expending thousands of dollars and hundreds of man hours of labor, permits were in fact "issued" and then "rescinded".

78. Restitution is the proper remedy for such egregious violations by public officers and employees of their fiduciary and public trust duty to protect the rights and property of plaintiff and obey the mandates of the Constitutions, state and federal, in relation to the Letters Patent and the resulting contractual relations involving plaintiff, the Letters Patent, and the United States of America.

79. Restitution must include restoring the property to its original condition with the dams and head gates and all of the associated disturbances to the land and property of plaintiff restored to its original condition prior to the first act of trespass including compensation for the loss of use and all fines, fees and costs associated with the actions in state courts and administrative agency action.

**Count Eight**

**Violation of Due Process Rights**

80. Plaintiff restates paragraphs 1 thru 22 above as if fully stated herein.

81. Plaintiff incorporates the Affidavit of Gary Allen Harrington, points 1 thru 102 and its supporting exhibits as if fully stated herein.

82. Defendants colluded with administrative hearings officers to violate plaintiff's due process right to a fair and impartial hearing by denying plaintiff's rights secured by state and federal law to enter into the record of the case a "certified copy" of the Letters Patent for the private lands owned by plaintiff. Thereby denying this material evidence from the jury and prejudicing plaintiff before the administrative agency.

83. Judge Timothy Gerking, Judge Lorenzo Mejia and Attorney Patrick A. Flanagan acting as officers of the court knew or should have known that they are prohibited by federal and state law from denying plaintiff the right to enter into the record of any proceeding a certified copy of the Letters Patent from the United States of America, as provided by ORS 93.650 and 680 and Title 43 §§57 and 83.

84. Judge Timothy Gerking , Judge Lorenzo Mejia and Attorney Patrick A. Flanagan in collusion with other defendants, with their superior knowledge of the law, knew or should have known that the term "appurtenance" includes everything necessary for the enjoyment of the land granted including "water" necessary to sustain life and provide for the fullest enjoyment of the land granted.

85. Judge Timothy Gerking and Attorney Patrick A. Flanagan while colluding with other defendants while possessed with their superior knowledge of the law, ignored the law to the injury of plaintiff by denying plaintiff the fundamental rights secured by the 1st, 4th, 5th, 6th, 7th, and 9th Amendments of the Constitution of the United States and the Constitution of Oregon, Article 1, Section 8, 9, 10, and 11.

86. Judge Timothy Gerking and Attorney Patrick A. Flanagan colluded together to create a Motion in Limine and Order [Exhibit 70] to be submitted by Attorney Patrick A. Flanagan that would "rip the guts out" of plaintiff's defense by preventing plaintiff from exercising the right, secured by Oregon and Federal laws, referenced above, to enter certified copies of the Letters Patent into the record which would prejudice the states case and cause the jury to rule in plaintiff's favor, thus protecting plaintiff's right to use the water and maintain the ponds that were built on the patented land.

87. Judge Timothy Gerking and Attorney Patrick A. Flanagan because of their superior knowledge of the law knew or should have known that a 'Motion in Limine' can only be used to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial and granting of motion is not a ruling on evidence where property drawn. *Redding v. Ferguson,* Tex.Civ.App., 501 S.W.2d 717, 724.

88. Judge Timothy Gerking and Attorney Patrick A. Flanagan with their higher standard and superior knowledge of the law, knew or should have known that preventing plaintiff from entering

into the record the Letters Patent would violate state and federal laws enacted to protect plaintiff in cases such as this from this type of criminal conduct.

89. Judge Timothy Gerking and Attorney Patrick A. Flanagan because of their superior knowledge and high standard of law knew or should have known that the Letters Patent were un-refutable evidence the rights to the water claimed by plaintiff were in fact valid and secured thereby.

90. Judge Timothy Gerking and Attorney Patrick A. Flanagan because of their superior knowledge of the law knew or should have known that once the jury was made aware of the Letters Patent and what was granted by them to the original grantee and his heirs and assigns '**forever**', the jury could not find for defendants.

91. In plaintiff's case the Motion in Limine was the vehicle used by, Judge Timothy Gerking and Attorney Patrick A. Flanagan, to prevent plaintiff from presenting the Letters Patent to the jury thus violating plaintiff's due process right to a fair and impartial hearing before an unbiased fact finder and jury.

92. As a direct and proximate cause of the violation of plaintiff's due process right, plaintiff suffered financial, social, emotional injury and loss of rights secured by fundamental law in the amount of 685,500,000 dollars.

**Conclusion**

93. A patent regularly issued by the government is the best and only evidence of a perfect title. The actual patent should be secured to place at rest any question as to validity of entries. *Young v. Miller,* 125 S.2d 257, 258(1960).

94. ORS 93.650 Effect of record or certified transcript in evidence. The record of a conveyance duly recorded, or a transcript thereof certified by the county clerk in whose office it is recorded may be read in evidence in any court in the state, with the like effect as the original conveyance. However, the effect of such evidence may be rebutted by other competent testimony.

95. The Letters Patent for lands from the United States of America is a contract within this clause, Article I, Section 10, Clause 1, whether made directly, or indirectly through a municipal corporation, and a statute repealing a prior grant is void. The prohibition extends to all legislation whereby the estate granted will be in anywise impaired. *Fletcher v. Peck,* 6 Cr. 137 (1810).

96. An executed grant is impaired by a law operating to divest any right or estate vested under it, and any attempt to destroy such vested rights is unconstitutional and void; e.g. an act attempting to take property from the grantee and confer it upon another, or an act annulling former grants and declaring that the grantors shall stand seised of their former estates. *Fletcher v. Peck,* 6 Cr. 137 (1810); *Gaines v. Buford,* 1 Dana 481.

97. A subsequent statute imposing conditions not contained in the original grant impairs the obligation of the grant and is void, and the legislature cannot by subsequent act, provide a different mode of perpetuating a trust in lands granted. *Fletcher v. Peck,* 6 Cr. 137 (1810).

98. Defendants' action impaired the obligations of the grant and in effect destroyed rights secured to plaintiff as an assign in the chain of title.

99. Defendants' action was planned and carried out by multiple agents and agencies in collusion to violate the intent of Congress with the creation of the Letters Patent as a muniment of title to secure lands to bona fide purchasers of the public lands.

100. Defendants further violated state statutes and provisions of the state Constitution in order to damage plaintiff property and property rights when they knew, or should have known, the Letters Patent from the United States of America transfer all of the rights, title and interest the United States held in the patented property including the right to use any water on, under or passing by the land.

**Relief Demanded**

101. Plaintiff makes demand for the damages set out in this complaint.

102. Defendants' actions were planned and carried out by a multitude of agents, officers and employees who were all under a public trust duty to protect plaintiff's rights and property.

103. Defendants knowingly and willingly breached the public trust duty and damaged plaintiff and plaintiff's property in the amount set out herein above.

104. Plaintiff does not know if an amount of damages can, or will ever, remove the scars from plaintiff's mind, body and relations in the community, neither is there any possible way to recapture the time out of life spent in prison at the hands of defendants.

105. Plaintiff must be returned to the state of peace and privacy enjoyed prior to the destruction of the ponds, violations of rights, trespass upon rights and property every other and or additional relief the Court may feel just under the circumstances of this cause of action.

Dated this 4th day of February 2016.

Gary Allen Harrington

# The United States of America,

To all to whom these presents shall come, Greeting:

Homestead Certificate No. 4941
Application 1182

Whereas There has been deposited in the General Land Office of the United States a Certificate of the Register of the Land Office at Roseburg Oregon whereby it appears that, pursuant to the Act of Congress approved 20th May, 1862, "To secure Homesteads to actual Settlers on the Public Domain," and the acts supplemental thereto, the claim of [illegible] has been established and duly consummated, in conformity to law, for the South east quarter of the north east quarter, the North east quarter of the South east quarter of Section twenty one and the West half of the South West quarter of Section twenty two in Township thirty one South of Range one East, in the District of Lands Subject to Sale at Roseburg Oregon, containing one hundred and sixty acres

according to the Official Plat of the Survey of the said Land, returned to the General Land Office by the Surveyor General.

Now know ye, That there is, therefore, granted by the United States unto the said [illegible] the tract of Land above described: To have and to hold the said tract of Land, with the appurtenances thereof, unto the said [illegible] and to his heirs and assigns forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights as may be recognized and acknowledged by the local customs, laws, and decisions of courts, and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law.

In testimony whereof, I, [illegible] President of the United States of America, have caused these letters to be made Patent, and the Seal of the General Land Office to be hereunto affixed.

Given under my hand at the City of Washington, the [illegible] day of [illegible] in the year of our Lord one thousand eight hundred and seventy [illegible] and of the Independence of the United States the [illegible]

BY THE PRESIDENT: [illegible]

By [illegible] Secretary

[illegible] Recorder of the General Land Office

Bureau of Land Management
Oregon State Office
P.O. Box 2965
Portland, OR 97208
I certify this reproduction is a copy of the original record on file in this office.
Authorized Signature
PAGE 1 OF 1 DATE 4/5/12

Exhibit 2

Roseburg 016951 and 018179.

4—1003-R.

# The United States of America,

**To all to whom these presents shall come, Greeting:**

WHEREAS, a Certificate of the Register of the Land Office at Roseburg, Oregon, has been deposited in the General Land Office, whereby it appears that, pursuant to the Act of Congress of May 20, 1862, "To Secure Homesteads to Actual Settlers on the Public Domain," and the acts supplemental thereto, the claim of John W. Lowman has been established and duly consummated, in conformity to law, for the following Oregon and California railroad grant lands title to which revested in the United States under the Act of Congress of June 9, 1916 (39 Stat. 218): the southeast quarter of the southeast quarter and the west half of the southeast quarter of Section twenty-one in Township thirty-four south of Range one east of the Willamette Meridian, Oregon, containing one hundred twenty acres,

according to the Official Plat of the Survey of the said Land, on file in the GENERAL LAND OFFICE:

NOW KNOW YE, That there is, therefore, granted by the UNITED STATES unto the said claimant the tract of Land above described; TO HAVE AND TO HOLD the said tract of Land, with the appurtenances thereof, unto the said claimant and to the heirs and assigns of the said claimant forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States.

IN TESTIMONY WHEREOF, I, Franklin D. Roosevelt, President of the United States of America, have caused these letters to be made Patent, and the seal of the General Land Office to be hereunto affixed.

GIVEN under my hand, at the City of Washington, the TWENTY-EIGHTH day of APRIL in the year of our Lord one thousand nine hundred and THIRTY-EIGHT and of the Independence of the United States the one hundred and SIXTY-SECOND.

[SEAL]

By the President: Franklin D Roosevelt

By Jeanne Kavanagh, Secretary.

Eulalia S. Adams

Recorder of the General Land Office.

RECORD OF PATENTS: Patent Number 1096823

Bureau of Land Management
Oregon State Office
P.O. Box 2965
Portland, OR 97208
I certify this reproduction is a copy of the original record on file in this office.

Exhibit 5

40.015

RECEIVED AND FILED

AUG 25 2011

TRIAL COURT ADMINISTRATOR
DOCKETED BY [illegible]

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

| STATE OF OREGON, Plaintiff, v. GARY A. HARRINGTON, Defendant. | Case No. 103843MI MOTION IN LIMINE |
|---|---|

**MOTION IN LIMINE**

The State moves for an order in limine barring testimony, evidence or reference in the presence of the jury to certain matters that are irrelevant and unduly prejudicial to the State, including matters related to: 1) storage or use of water in reservoirs for fighting fire; 2) federal preemption of state water resource laws; 3) purported donation of the reservoirs and use of water; 4) a contract to use water with local, state or federal government; 5) Defendant's or other reservoirs as "exempt"; 6) status of other reservoirs in the watershed; 7) use of reservoirs for fish; 8) whether the Oregon Water Resources Department decisions denying Defendant's applications for permits were incorrectly decided, or any other matter exclusively subject to judicial review under the Administrative Procedure Act; and 9) any matter that is the subject of Defendant's pretrial motions. The State has attempted to anticipate Defendant's arguments based on those he has made in other forums. The State reserves the right to further move to bar testimony, evidence or reference to other matters that Defendant may raise where this would be irrelevant or unduly prejudicial to the State. The State requests oral argument at the previously schedule appearance on pretrial motions, which the Court has scheduled for September 1, 2011, and estimates that oral argument on this motion will take approximately one hour.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Exhibit 70

They left out the part about issuing permits

## POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION IN LIMINE

This case concerns Defendant's unlawful storage of water in three reservoirs on his property. All waters from all sources of water supply belong to the public. ORS 537.110. A person "may not use, store or divert any waters until after the [Water Resources] department issues a permit to appropriate the waters." ORS 537.130(2). There is no dispute that Defendant "owns property near Eagle Point that is located within the Big Butte Creek watershed." *Harrington v. Water Resources Department*, 216 Or. App. 16, 19, 171 P.3d 1001, 1002 (Or. App. 2007) (copy attached for the Court's convenience). "In 1925, the legislature withdrew all waters within that watershed from appropriation other than for the use and benefit of the City of Medford, subject to pre-existing water rights." *Id.* (citing ORS 538.430). In 2002, Defendant submitted to the Department two applications for permits to store water in two reservoirs on his property and submitted a third application to store water in a third reservoir that he intended to construct. *Id.* 216 Or. App. at 20, 171 P.3d at 1002.[1] The Department ultimately denied all three applications because, in enacting ORS 538.430, the legislature had withdrawn the water at issue from appropriation other than for the City of Medford. *Id.* In 2004, Defendant was criminally charged with Interfere/Use of Water Denied of which Defendant was convicted in 2008, based on a plea of No Contest.[2]

---

[1] Copies of the applications are attached hereto as Exhibit A to this motion. Defendant has previously submitted these applications as Exhibits 6, 7 and 8 to Defendant's Petition for Judicial Review in *Harrington v. Water Resources Department*, Case No. 041750Z3 (May 13, 2004, Jackson Cty), one of the petitions for review on appeal. *Id.* at 19. In addition, Defendants' applications were submitted as undisputed facts in *Harrington v. Ward, et al.*, Case No. CV06-460-CO (D. Or.) (Docket #21, Exhibit 2 at 15-21). The State requests that the Court take judicial notice of Defendants' applications submitted previously by Defendant to this Court in another matter pursuant to Rule 201(b) of the Oregon Evidence Code. The first application is to store water in reservoir "GG," which had been in existence for 28 years at the time of the application. Exhibit A at pp. 1-2. The second application is to store water in reservoir "Elk Ridge" which had been in existence for six years at the time of the application. Exhibit A at 3-4. The third application is to construct a reservoir that Defendant's application indicates that Defendant had already constructed in 2001-2002. Exhibit A at 6.

[2] *State of Oregon v. Harrington*, Case No. 041788MI, Judgment of Conviction and Sentence, attached hereto as Exhibit B. The State requests that the Court take judicial notice of its own Judgment pursuant to Rule 201(b) of the Oregon Evidence Code.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LEGAL STANDARD

Evidence is inadmissible when it is irrelevant or when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 402, 403. In determining whether the probative value of evidence is outweighed by its prejudicial impact, three factors must be considered: "[1] the need for the evidence; [2] its persuasiveness; [3] and its inflammatory effect on the jury." *State of Oregon v. Mattila*, 77 Or. App 219, 224, 712 P.2d 832, 835 (1986).

**I. Evidence or reference to storage or use of water in reservoirs for purposes of fighting fire is a legal question, irrelevant and unduly prejudicial.**

Defendant is likely to assert that the storage of water in the three reservoirs on his property is exempt from the requirement to obtain a permit from the Water Resources Department because he intends to use the water for fire-fighting purposes or water from one or more of the reservoirs has been used for fire-fighting purposes in the past. Exemption from legal requirements is a legal question that should not be presented at trial. Evidence or reference to use of the water for fighting fire at trial is not relevant and would be unduly prejudicial to the State.

There is no exemption allowing Defendant to store water in his reservoirs for later use for fire-fighting purposes. There is an exemption for the use of water for emergency fire-fighting purposes, if the water is already lawfully stored. ORS 537.141(1)(a). In 1993, Martha Pagel, the Director of Water Resources at that time, explained the exemption and the distinction between the use of water for emergency fire-fighting purposes and the requirement of a permit to legally store water in reservoirs: "[R]eference to fire fighting uses doesn't authorize the storage of water. Because that's not an emergency, creating a reservoir and having a pool of water is not an emergency situation." Declaration of Shannon Ross, Exhibit 1 at 4 (transcript of legislative

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

hearing tapes). Therefore, if Defendant were lawfully permitted to *store* water in his reservoirs, then the water could be *used* for emergency fire-fighting purposes. However, the State will demonstrate that Defendant does not have a permit to store water in his reservoirs. Any testimony, evidence or reference to past or potential future use of the water that is unlawfully stored in the reservoirs for fire-fighting purposes is irrelevant to whether Defendant lawfully stored water in his reservoirs.

In addition, any testimony, evidence or reference to the use of the water that is unlawfully stored in the reservoirs for emergency fire-fighting purposes would be unduly prejudicial to the State. There are likely many residents of Jackson County that have used or witnessed the use of water from ponds or reservoirs for emergency fire-fighting purposes. These jurors may not distinguish between the unlawful storage of the water in Defendants' reservoirs from the lawful use of water for emergency fire-fighting purposes.

**II. Evidence or reference to federal preemption of state water resource laws is a legal question, irrelevant and unduly prejudicial.**

Defendant is likely to assert that his storage and use of water in the three reservoirs is lawful based on a theory of federal preemption generally, or based on an alleged federal land patent or past or future use of water for emergency firefighting by the United States Forest Service. Federal preemption is a legal question that should not be presented at trial. Evidence or reference to federal preemption at trial is not relevant and would be unduly prejudicial to the State.

There are three ways that federal law can preempt state law: (1) when Congress does so expressly; (2) when Congress "occupies the field"; or (3) when the laws conflict (either because compliance with both laws is physically impossible, or because the state law is an obstacle to the "full purposes and objectives of Congress"). *English v. Gen. Elec.* Co., 496 U.S. 72, 78-79 (1990). Federal law does not preempt state water resources law as it applies to Defendant in any of these respects.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

To the extent Defendant attempts to argue federal preemption of state water law generally, there is no federal law that preempts the state water resources law. For many years prior to 1866, the right to use of water in the arid western states and territories was regulated by local rule and custom of prior appropriation. *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 154 (1935). The federal government silently acquiesced in local regulation of water resources and then confirmed local regulation when it enacted the Acts of July 1866,[3] July 9, 1870[4] and the Desert Land Act of 1877.[5] *Id.* at 154-155. The Supreme Court later characterized the purpose of the Acts of 1866 and 1870 as "governmental recognition and sanction of possessory rights [including water rights] on public lands asserted under local laws and customs." *Federal Power Comm'n v. State of Oregon*, 349 U.S. 435, 448 (1955). The Desert Lands Act provided that "such water rights were to be acquired in the manner provided by the law of the State of location." *Id.* Therefore, the federal government has long recognized that the right to water is a matter of state law.

Defendant may attempt to argue at trial that he is a successor in interest to a federal land patent that entitles him to the water found on his property. If Defendant holds a federal land patent (which the State reserves the right to dispute), whether that land patent includes the right to store water in Defendant's reservoirs is a legal question that should be decided prior to trial. It is unlikely Defendant holds a federal land patent that includes the right to store water in his three reservoirs because in 1877, if not before, Congress severed all nonnavigable waters from public lands. *California Oregon Power Co.*, 295 U.S. at 163-164. The right to store and use those waters was "subject to the plenary control" of the states. *Id.* Moreover, there is no dispute that Defendant constructed his three reservoirs and began impounding water well after 1925, the year

[3] 14 Stat. 253, see 43 U.S.C. § 661.

[4] 16 Stat. 218, see 43 U.S.C. § 661.

[5] 19 Stat. 377, see 43 U.S.C. § 321.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the state legislature withdrew the water for the use and benefit of the City of Medford. *See* Exhibit B.

Defendant may attempt to argue at trial that the United States Forest Service, a federal agency, has used in the past or may use in the future the water in Defendant's reservoirs for emergency firefighting purposes. Even if this is the case, a federal agency's use of water for emergency firefighting purposes does not preempt the state law requirement that Defendant have a permit to store and use the water in his three reservoirs in the first instance. Federal agency use of water is not a federal law or regulation that preempts state law expressly, by occupying the field or by creating a conflict. A federal agency does not have authority to preempt or exempt Defendant's storage and use of water from state law requirements.

Any evidence or reference to legal questions of federal preemption, including any attempt to introduce evidence or refer to the use of water from the reservoirs by the United States Forest Service, should be barred at trial because it would be confusing to the jurors and unduly prejudicial to the state.

**III. Evidence or reference to the purported donation of the reservoirs and use of water is a legal question, irrelevant and unduly prejudicial.**

Defendant may attempt to introduce evidence that he has donated the three reservoirs on his property to the Town of Butte Falls for use for fire suppression or other use. Defendant cannot give away what he does not own.[6] ORS 538.430 (water in this watershed for the exclusive use and benefit of the City of Medford). Moreover, Defendant's purported donation likely post-dates Defendant's unlawful acts that are the basis of this action. Introduction of evidence or reference to Defendant donating the reservoirs for firefighting use would be unduly prejudicial to the state.

[6] The Town cannot lawfully store the water for later use for emergency firefighting any more than Defendant could make the same use, as discussed in Section I above.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**IV. Evidence or reference to a contract to use water with local, state or federal government is a legal question, irrelevant and unduly prejudicial.**

Defendant may intend to argue that the purported donation to the Town or some other contract cures his unlawful storage and use of water in his reservoirs based upon statutory language related to limited licenses to use stored water. The Department can issue a limited license "to use stored water for purposes for which the stored water is authorized and in accordance with a contract with a local, state or federal government . . . ." ORS 537.143(1) and (9). In other words, a limited license to *use* stored water is limited to uses for which the *stored* water is authorized. *Id.* The State will demonstrate that Defendant's storage of water is not authorized; therefore no limited license could issue for the use of it. Moreover, a limited license is for short-term use and of fixed duration, not continual storage in reservoirs. ORS 537.143(1). Defendant's purported donation to the Town or any other contract does not cure Defendant's unlawful storage and use of water for these reasons, and the additional reason that such donation or contracts likely post-date Defendant's unlawful acts that are the basis of this action. Any evidence or reference to the purported donation or any other potential contract is a legal issue, not relevant and would be unduly prejudicial to the State.

**V. Evidence or reference to Defendant's or other reservoirs as "exempt" is a legal question, irrelevant and unduly prejudicial.**

Defendant may assert that his reservoirs are "exempt" ponds. Whether Defendant's reservoirs are exempt historical ponds is a legal question. In addition, Defendant should be barred from referring to or providing evidence of exempt historical ponds because it would confuse jurors who may own exempt ponds or know of landowners who have exempt ponds. Reference or evidence concerning exempt historical ponds would be unduly prejudicial to the state.

Historically, many landowners had constructed reservoirs (ponds) for stock water, aesthetic or other purposes without applying for a state permit to create them or store water in

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

them. Ross Declaration, Exhibit 2 at 1. To address these unauthorized reservoirs, in 1993, the Oregon Legislature adopted House Bill 2153, which was enacted into Oregon Law, Chapter 595, Section 3(1)(d). *Id.*, Exhibit 3. This provision allowed landowners with reservoirs that were in existence prior to 1993 to be exempt from the permit requirements, but they could only qualify for the exemption if they provided notice to the Water Resources Department on or before January 1, 1995. *Id.* at Section 3(2). In testimony on HB 2153, the Director described this provision as "an 'amnesty period' for existing ponds in which the owners can apply for a regular water right. To qualify for this program, users must file water applications before January 1, 1995." Ross Declaration, Exhibit 2 at 2. This was referred to as the "pond registration system," which "[a]fter two years, the registration system would expire, and current water rights rules would apply to all ponds." Ross Declaration, Exhibit 4 at 1. In 1995, the State enacted as Oregon Laws 1995, Chapter 752, Section 2, which is codified as ORS 537.405. This provision essentially extended to January 31, 1997 the time to register existing small reservoirs as exempt. ORS 537.405(2)(a).

Defendant cannot demonstrate that he registered his reservoirs as exempt existing small reservoirs.[7] Any reference to his reservoirs or other reservoirs in the watershed as exempt historical ponds is a legal question and would be unduly prejudicial to the State if referenced or introduced at trial.

**VI. Evidence or reference to the status of other reservoirs in the watershed is irrelevant, involves a legal question and is unduly prejudicial.**

Defendant may attempt to refer to or introduce evidence pertaining to water reservoirs or ponds in the watershed other than those on Defendant's property. Whether another person is unlawfully storing water in a pond or reservoir is irrelevant to whether Defendant's actions are

---

[7] According to Defendant's statement in his applications to the Department, only Reservoir "GG" existed prior to 1993, and Reservoir "Elk Ridge" was constructed in approximately 1996 and Reservoir "Hoover II" was constructed in 2002. Exhibit B (Defendant's 2002 applications for permits).

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

unlawful. Moreover, it is a legal question based on the particular facts of each situation whether another person's water storage is lawful or unlawful.[8] Such references or evidence would be confusing to the jury. In addition to being irrelevant and confusing, such reference or evidence, related to Defendant's belief that he is being selectively prosecuted, would be unduly prejudicial to the State.

**VII. Evidence or reference to use of reservoirs for fish is irrelevant and unduly prejudicial.**

Defendant may attempt to reference or present evidence that the reservoirs on his property contain fish. There is no exemption from the permit requirement for reservoirs storing water simply because they may contain fish. *See* ORS 537.141. There is a permit exemption for fish screens, fishways and fish by-pass structures (ORS 537.141(d)), but none to keep fish. Thus, reference to the existence of fish in the reservoirs is not relevant, and it would be unduly prejudicial to the State.

**VIII. Evidence or reference to whether the Oregon Water Resources Department decisions denying Defendant's applications for permits were incorrectly decided, or any other matter exclusively subject to judicial review under the Administrative Procedure Act.**

Defendant challenged the Water Resources Department's decisions denying his applications for two permits to store water in reservoirs and a permit to construct a third reservoir. *Harrington v. Water Resources Department*, 216 Or. App. 16, 20-21, 171 P.3d 1001, 1003 (Or. App. 2007) (copy attached for the Court's convenience) (describing the procedural posture of Jackson County Circuit Court case number 041750Z3). Defendant also challenged the regional watermaster's orders to keep the head gates on each reservoir open because he was illegally storing water. *Id.* at 21. The trial court granted the Department's motions for summary judgment in both cases, and Defendant appealed. *Id.* On appeal, Defendant attempted to argue

[8] To the extent that Defendant introduces evidence of any other person's storage or use of water that is unlawful, Defendant may subject such persons to state action, whether administrative, civil or criminal, depending on the facts of the matter.

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

the Department did not have jurisdiction over diffuse surface waters. *Id.* at 24. The Court of Appeals held that the trial court did not have jurisdiction over that issue or any of Defendant's claims because he had failed to seek judicial review of the orders in a timely fashion. The court held Defendant could not circumvent the exclusive review process of the Administrative Procedures Act (APA) by filing a declaratory judgment action. *Id.* at 25. Defendant could have raised his arguments that the Department did not have regulatory authority over diffuse waters in the permit proceedings before the Department or in challenging the Department's enforcement order. Defendant could not raise these arguments in a later-filed declaratory judgment action. *Id.* at 26. The Oregon Court of Appeals consistently has held that the APA establishes the exclusive method to challenge decisions made by state agencies. *Id.* at 25-26 (citing *Bay River v. Envir. Quality Comm.*, 26 Or. App. 717, 54 P.2d 620, *rev. den.*, 276 Or. 555 (1976); *Eppler v. Board of Tax Service Examiners*, 189 Or. App. 216, 219, 75 P.3d 900 (2003); and *Lake County v. State of Oregon*, 142 Or. App. 162, 920 P.2d 1115 (1996)).

The State expects Defendant to attempt to argue again that the water in his reservoirs is not subject to the legislative grant to the City of Medford the exclusive right to use all the waters of Big Butte Creek and its tributaries. ORS 538.430. Defendant cannot raise this legal argument as a defense here because it is subject to the exclusive review provisions of the APA. Nor can Defendant raise any other argument that the Department's orders denying his applications for permits to store water in the reservoirs or to construct the third reservoir were incorrectly decided. These arguments or evidence concerning these arguments may also include Defendant's theory that he does not need a permit based on a claimed federal land patent, that the he can store water for later use for fire-fighting purposes without a permit, or that he can store water in the reservoirs for fish. The exclusive avenue for review of the Department's final orders was through judicial review pursuant to the APA.

The State will demonstrate at trial that Defendant did not and does not have a permit that would allow him to lawfully store and use water in his reservoirs. Whether the Department's

Department of Justice
1515 SW Fifth Ave, Suite 410
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

decisions denying Defendant's applications were correct is exclusively subject to judicial review under the APA. Defendant sought judicial review of those decisions, as well as the Department's enforcement orders. Defendant was unsuccessful. Any discussion of whether the Department's decisions were correctly decided would only confuse the jury, waste scarce judicial resources by taking up time at trial, and would be unduly prejudicial to the State.

**IX. Evidence or reference to any matter that is the subject of Defendant's pretrial motions.**

The State has attempted to anticipate Defendant's arguments based on those he has made in other forums. If Defendant raises other issues or arguments in pretrial motions, the State requests that Defendant be barred from referencing or introducing evidence pertaining to those issues or arguments to the extent that they are legal questions, irrelevant or unduly prejudicial to the State.

DATED this 23rd day of August, 2011.

Respectfully submitted,

JOHN R. KROGER
Attorney General

STEPHANIE M. PARENT #925908
Senior Assistant Attorney General
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
Stephanie.M.Parent@doj.state.or.us
Of Attorneys for Plaintiff

RECEIVED AND FILED

SEP 08 2011

TRIAL COURT ADMINISTRATOR
DOCKETED BY

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR JACKSON COUNTY

STATE OF OREGON,
Plaintiff,
v.
GARY A. HARRINGTON,
Defendant.

Case No. 10-3843-MI

ORDER

This matter came before the Court for an Omnibus hearing on September 1, 2011 pursuant to ORS 135.037. The State appearing by and through its counsel Patrick A. Flanagan and Stephanie Parent and Defendant appearing by and through his counsel Gregory Abel and the Court having heard the arguments of counsel and being fully advised in the premises rules on the various motions filed as follows:

A. State's Motion to Strike Declaration and Expert Letter of Laura A. Schroeder and to Exclude Testimony of Laura A. Schroeder

The State's Motion to Strike is allowed. The Court having reviewed the Declaration and letter of attorney Schroeder considers it essentially to be a legal argument by an attorney other than the attorney of record for the Defendant and is otherwise improper under OEC 702. In any event, the contents of those submissions are almost entirely duplicitous and add nothing in addition to attorney Abel's written argument in support of his client's Motion to Dismiss.

B. Defendant's Omnibus Motion to Dismiss

1.) Subject Matter Jurisdiction

a.) Defendant's motion based on the argument that the State lacks jurisdiction to regulate diffuse surface water is denied as a matter of law. The Court incorporates by reference this Court's 3/10/06 ruling on this issue in Gary Harrington, Petitioner, vs. Water Resources Department, of the State of Oregon, Water Resources Commission, of the State of Oregon, City of Medford, a Municipality, and Medford Water Commission, a Municipality, Respondents, Jackson County Case No. 041960Z0, which is attached to the State's Response to Defendant's Motion to Dismiss.

b.) Defendant's motion based on the argument that the State, through the Water Resources Department, lacks jurisdiction to regulate waters, including diffuse surface water, within the Big Butte Creek watershed is denied as a matter of law. The Court incorporates by references this Court's 3/10/06 ruling on this issue in Gary Harrington, Petitioner, vs. Water Resources Department, of the State of Oregon, Water Resources Commission, of the State of Oregon, City of Medford, a Municipality, and Medford Water Commission, a Municipality, Respondents, Jackson County Case No. 041960Z0, which is attached to the State's Response to Defendant's Motion to Dismiss. Suffice it to say, the Water Resource Department has exclusive regulatory jurisdiction over all waters in the State of Oregon including those waters in the Big Butte Creek watershed that is subject to ORS 538.430.

2.) Selective or Vindictive Prosecution

The record before the Court is insufficient on this issue and Defendant's motion is therefore denied.

3.) Double Jeopardy

Defendant's motion is denied on the grounds that the subject prosecution is based on conduct that occurred well after the conduct that served as the basis for Defendant's previous conviction.

C.) <u>The State's Motions in Limine</u>

1. Evidence Regarding Storage and/or use of water in reservoirs for firefighting and/or firefighting training.

Granted

2. Evidence regarding federal preemption of State water resource laws.

Granted

3. Evidence regarding the purported donation of water in Defendant's reservoirs.

Granted

4. Evidence regarding contracts between Defendant and public entities, including City of Butte Falls, for use of water in Defendant's reservoirs.

Granted

5. Evidence regarding the exempt status of Defendant's reservoirs.

Granted, unless defendant can establish a specific exemption other than ORS 537.141 (1) (a) & (b).

6. Evidence regarding status of other reservoirs in the Big Butte Creek watershed.

Granted, unless Defendant intends to use such evidence to establish defense of selective enforcement and, in that event, such evidence would be admissible on that issue alone.

7. Evidence regarding fish in Defendant's reservoirs.

Granted endangered pond turtle? ☺

8. Evidence regarding Defendant's application history for the reservoirs in question and/or whether decisions by the OWRD with regard to same were correct.

Granted

-1-ORDER

9. Any other evidence pertaining to issues embodied in Motions 1- 8. Denied at this time.

D.) Defendant's Motion to Postpone

Defendant's Motion is allowed and the trial is rescheduled to January 12, 2012. No further motions to postpone by Defendant, except for extraordinary circumstances, will be considered by the Court. Defendant shall notify opposing counsel and the Court at least 30 days prior to trial of his intent to further assert the defense of selective or vindictive enforcement. If so, the trial of that issue will be bifurcated and tried first to the Court, unless either party, based on the submission of appropriate authority to the Court, requests that issue be tried to a jury, in which case a separate jury will be empanelled to hear that issue first.

DATED this 8th day of September, 2011.

Tim Gerking
Circuit Court Judge

c: Patrick A. Flanagan, State Attorney
Greg Abel, Attorney for Defendant